CHARLES. E. DOLE, in Equity,

*vs.*

THE BANGOR AUDITORIUM ASSOCIATION, and another.

Penobscot.   Opinion January 24, 1901.

*Lien. Expiration. R. S., c. 91, § 32.*

In September, 1897, the plaintiff agreed orally with the defendant to wire the defendants' auditorium building for electricity in accordance with the rules and regulations of the New England Insurance Exchange, for which he was to receive compensation by the day.

The plaintiff quit work November 27, 1897, and notified the Insurance Exchange that the work was ready for inspection. The inspection was not made till the first of October, 1898, and thereafterwards the plaintiff was notified by the inspector that a cut out cabinet was required. November 10, 1898, the plaintiff, without any further contract with the defendants, put in the cut out cabinet, charging therefor the sum of $1.90.

The plaintiff thereupon brought a suit in equity to enforce a lien on the building for his services performed in 1897, and for putting in the cut out cabinet in November, 1898.

*Held;* That the plaintiff's lien for labor performed in 1897 expired because he instituted no proceedings to enforce the same within the time required by statute, and that such lien was not preserved or revived by the work done in 1898.

IN EQUITY. ON APPEAL.

The case appears in the opinion.

*T. W. Vose,* for plaintiff.

*F. H. Appleton and H. R. Chaplin,* for defendant.

SITTING: WISWELL, C. J. WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

FOGLER, J.   This is a bill in equity brought to enforce an alleged lien upon a building, and upon the land on which it stands, for labor and materials furnished for the construction of the building: The case comes here upon the plaintiff's appeal from a decree of a single justice dismissing the bill with costs.

By the terms of a verbal contract entered into between the plaintiff and the Bangor Auditorium Association in September, 1897, the plaintiff agreed to wire the large auditorium building of the Association for electricity, in accordance with the rules and regulations of the New England Insurance Exchange, and have it ready for use at the time of the Maine Musical Festival, to be held about the middle of the following month, for which the building was constructed, and to receive compensation therefor by the day.

The plaintiff commenced work September 30, 1897, and testifies that he "got it in shape to open" on the night of the festival, but that it was not completed at that time. After the festival he went back and worked till November 27th, and notified the insurance exchange that the work was ready for inspection. The inspection was not made till about the first of October, 1898, and thereafterwards the plaintiff was notified by the inspector that he must put in a "cut out cabinet," which he did on November 1st, 1898, charging therefor, $1.90. After putting in such cabinet, he filed in the office of the city clerk, November 10th, 1898, a statement claiming a lien on the building and the defendant's interest in the land on which it stands, for his whole bill, including his account for work done in 1897, nearly a year prior to the filing of the statement.

After he stopped work November 27th, 1897, he did no work on the building, and furnished no material therefor until he put in the cut out November 1, 1898.

The plaintiff claims that, as, under his agreement he was to wire the building to the acceptance of the New England Insurance Exchange, and that as the cut out cabinet was required by its rules, the contract was not completed until this cut out was put in, and that whether it was put in immediately or not for a year afterwards, his lien on the building and lot would continue for forty days thereafter, and that the filing of the statement of his claim within the forty days, revives his lien for his whole account for labor and materials.

The plaintiff's testimony shows that, when he entered into the contract to do this work in 1897, he had in his possession a copy of the rules and regulations of the New England Insurance

Exchange, that such rules required a cut out cabinet such as he was instructed in October, 1898, to furnish, and that he knew of the rule as to the cut out at that time.

He testifies that one of the chief reasons for not putting in the cut out cabinet in November, 1897, was that he didn't have time, and the building not being used every day it was let go from day to day, awaiting inspection.

After stopping work in November, 1897, the plaintiff presented his bill amounting to $749.28 to the Auditorium Association, and on December 10, 1897, received $500, in part payment thereof. After receiving notice from the inspector he put in the "cut out" without the consent or knowledge of any officer or agent of the Association authorized to contract in its behalf. It will be noted that the plaintiff was employed, not under an entire contract for a specified sum, but by the day. There seems to us no good reason for the delay in putting in the "cut out." It can hardly have been lack of time, for only five hours were required to do the work. There was no necessity of awaiting inspection for the plaintiff knew that the "cut out" was required by the rules. The delay may have been on account of the plaintiff's inattention or neglect, or it may have been for the purpose of continuing or reviving his lien.

The statute, R. S., ch. 91, § 32, provides that a lien for labor and materials furnished for the erection or repair of a building, shall be dissolved unless the lien claimant within forty days after he ceases to labor or furnish materials, files in the office of the clerk of the town in which such building is situated, a true statement, subscribed and sworn to, of the amount due him with all just credits given, together with a description of the property intended to be covered by the lien, sufficiently accurate to identify it and the names of the owners of the property, if known, which shall be recorded in a book kept for that purpose by said clerk. The purpose of the statute is to give notice to any and all persons of the lien incumbrance. In the present case the plaintiff ceased to furnish labor and materials for the building, November 27, 1897. Apparently his duty in regard to the building had ceased. The

agents of the owner so understood it. The plaintiff said or did nothing to indicate that such was not his understanding. We think his lien was dissolved in forty days after that date.

A lien once lost cannot be revived by subsequent work. *Woodruff* v. *Hovey*, 91. Maine, 116; *Cole* v. *Clark*, 85 Maine, 336: *Darrington* v. *Moore*, 88 Maine, 569.

Nor do we think that the trifling labor performed and materials furnished by the plaintiff in November, 1898, to complete what was left incomplete by him nearly a year before, either purposely or by inadvertence, revived the lien. *Hartley* v. *Richardson*, 91 Maine, 427; *Baker* v. *Fessenden*, 71 Maine, 294.

To hold otherwise would not be in accord with the purpose or spirit of the statute.

*Appeal dismissed.*
*Decree below affirmed with additional costs.*